UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

SARAGPAUL CHARRAN, A88-443-802,

        Petitioner,

    -v-                                        13-CV-930-JTC

MICHAEL T. PHILLIPS, Field Office Director, Buffalo, NY Field Office of U.S. Immigration and Customs Enforcement, Enforcement and Removal Operation;

TODD TRYON, Assistant Field Office Director, Buffalo, NY Field Office of U.S. Immigration and Customs Enforcement, Enforcement and Removal Operation;

JOHN T. MORTON, Secretary of U.S. Immigration and Customs Enforcement;

JANET NAPOLITANO, Secretary of Homeland Security;

ERIC H. HOLDER, Jr., Attorney General of the United States; and the

U.S. Department of Homeland Security,

        Respondents.

---

## **INTRODUCTION**

Petitioner Saragpaul Charran, A88-443-802, an alien in the custody of the United States Department of Homeland Security, Immigration and Customs Enforcement (collectively, "DHS"), has filed this *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 seeking release from detention at the Buffalo Federal Detention Facility in Batavia, New York, pending the execution of a final immigration order of removal issued

against him. Item 1. As directed by this court's order entered October 15, 2013 (Item 2), respondent[1] has submitted an answer and return (Item 5), along with an accompanying memorandum of law (Item 4), in opposition to the petition, and petitioner has submitted a reply (Item 6). For the reasons that follow, the petition is denied.

## **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Petitioner, a native and citizen of Guyana, entered the United States at an unknown place and on an unknown date, without being admitted or paroled after inspection by an Immigration officer. *See* Item 5-2 (Exh. A attached to Declaration of DHS Deportation Officer Juanita Payan (Item 5-1)), p. 2. DHS records reflect that, while present in the United States, petitioner has been arrested several times and convicted of several criminal offenses, including the following:

- a. On or about June 15, 1999, petitioner was convicted of Attempted Criminal Mischief in the 4th Degree.

- b. On or about July 2, 1999, petitioner was convicted of Assault in the 3rd Degree: With Intent to Cause Physical Injury and Criminal Contempt in the 2nd Degree (2 counts).

- c. On or about November 1, 1999, petitioner was convicted of Criminal Trespass in the 2nd Degree.

- d. On or about December 17, 1999, petitioner was convicted of Criminal Contempt in the 2nd Degree and Disorderly Behavior.

- e. On or about October 30, 2000, petitioner was convicted of Criminal Contempt in the 2nd Degree and Disobeying Court (2 counts).

---

[1]The only proper respondent in this proceeding is Todd Tryon, Assistant Field Office Director, Immigration and Customs Enforcement, Buffalo, New York Office, and Director of the Buffalo Federal Detention Facility, as he is "the person who has custody over [the petitioner]." 28 U.S.C. § 2242; *see also* § 2243 ("The writ, or order to show cause shall be directed to the person having custody of the person detained."); *Rumsfeld v. Padilla*, 542 U.S. 426, 434–35 (2004).

    f.      On or about February 16, 2001, petitioner was convicted in the Criminal Court of the City of New York City, County of Kings, of Assault in the 3rd Degree: With Intent to Cause Physical Injury.

    g.      On or about October 5, 2001, petitioner was convicted of Criminal Contempt in the 1st Degree: Prior conviction within preceding 5 years.

    h.      On or about April 6, 2002, petitioner was convicted of Criminal Trespass in the 2nd Degree.

    I.      On or about April 16, 2004, petitioner was convicted of Driving While Intoxicated – 1st Offense. He was granted a conditional discharge.

    j.      On or about October 3, 2005, petitioner was convicted of Disorderly Conduct.

    k.      On or about April 6, 2009, petitioner was convicted in the Criminal Court of the City of New York, County of Queens, of Petit Larceny.

    l.      On or about April 8, 2009, petitioner was convicted in the Criminal Court of the City of New York, County of Kings, of Menacing in the 3rd Degree.

    m.      On or about October 29, 2009, petitioner was re-sentenced for violating the conditional discharge granted for his April DWI conviction.

    n.      On or about November 16, 2010, petitioner was convicted in the Criminal Court of the State of New York, County of Kings, of Assault in the 3rd Degree: With Intent to Cause Physical Injury (2 counts). He was granted a conditional discharge. On or about February 22, 2012, petitioner was re-sentenced for violating the terms of conditional discharge.

*See id.* at 4-5, 20, 25-26.

DHS records further reflect that, on October 21, 2011, while incarcerated at the Riker's Island Correctional Facility in New York City, petitioner was encountered by DHS Criminal Alien Program Officers, at which time he claimed to be a national and citizen of St. Vincent-Grenadines, and an immigration detainer was lodged against him. *Id.*, pp. 5, 24-26. On February 24, 2012, upon his release from Riker's Island, petitioner was received into DHS custody and placed in immigration removal proceedings by a Notice to Appear ("NTA"), charging him with being subject to removal from the United States

pursuant to Immigration and Nationality Act ("INA") § 212(a)(6)(A)(i) (8 U.S.C. § 1182(a)(6)(A)(i)), as an alien present in the United States without being admitted or paroled, and pursuant to INA § 212(a)(2)(A)(i)(I) (8 U.S.C. § 1182(a)(2)(A)(i)(I)), as an alien convicted of a crime of moral turpitude. *Id.* at 5, 19-21. On March 5, 2012, petitioner was served with notice of Additional Charges of Inadmissibility/Deportability, charging in lieu of the original allegation of citizenship in the NTA that petitioner is a native and citizen of Guyana, and not St. Vincent-Grenadines. *See id.* at 17-18.

On July 19, 2012, an Immigration Judge ("IJ") denied petitioner's application for relief from removal and ordered petitioner removed to Guyana. *Id.* at 15-16. Petitioner appealed the IJ's decision to the Board of Immigration Appeals ("BIA"), and on November 30, 2012, the BIA dismissed petitioner's appeal. *Id.* at 14-15. On December 10, 2012, petitioner filed a motion to reopen the removal proceedings, which was denied by the BIA on January 22, 2013. *Id.* at 5, 13.

On or about December 10, 2012, DHS sent a presentation packet to the Embassy of Guyana ("Embassy") in Washington, D.C., requesting that a travel document be issued for petitioner's removal. *Id.* at 27-30. On December 13, 2012, DHS served petitioner with a formal Warning for Failure to Depart (Form I-229(a)), along with an instruction sheet listing actions that petitioner was required to complete within 30 days to assist in obtaining a travel document for his removal from the United States. *Id.* at 11-12. The warning form advised, among other things, of penalties under INA § 243 for conniving or conspiring to prevent or hamper his departure from the United States, and also advised that pursuant to INA § 241(a)(1)(C), a failure to comply or provide sufficient evidence of his inability to

comply, may result in the extension of the removal period and subject him to further detention. *Id.* Additional Warnings for Failure to Depart were served on January 11, 2013, and February 13, 2013. *Id.* at 7-10. DHS records reflect that on January 22, 2013, a representative of the Guyanese Embassy notified DHS that a "travel document is ready for issuance as long as subject has no pending cases." Item 5-1, ¶ 15.

On February 19, 2013, petitioner filed in the United States Court of Appeals for the Second Circuit a petition for review of the BIA's order of January 22, 2013, accompanied by a request for stay of removal. *See* Item 5-2, pp. 31-33 (Docket Sheet, *Charran v. Holder*, 2d Cir. Dkt. No. 13-559). This court's check of the Second Circuit's Public Access to Court Electronic Records ("PACER") service indicates that, as of this writing, the petition for review and request for stay remain pending with the circuit court.

In accordance with immigration regulations (*see* 8 C.F.R. § 241.4), DHS reviewed petitioner's custody status in March 2013, and petitioner was notified on or about March 18, 2013, that his detention would be continued based upon the totality of available information in his file—in particular, his "extensive and violent criminal history," failure to appear for criminal hearings on several occasions, recidivist behavior, violations of conditions of parole, and limited family and community ties—indicating that he would be a threat to the community and a flight risk if he were to be released from custody. *See id.* at 4-6. Additional custody status reviews were conducted in May and August 2013, and petitioner was notified following each review that his detention would be continued, and that DHS was working with Guyanese officials to secure travel documents for his removal, which was expected to occur in the reasonably foreseeable future upon resolution of his

litigation in the Second Circuit challenging the BIA's dismissal of his appeal from the IJ's removal order. *Id.* at 2-3.

Petitioner filed this action on September 16, 2013, seeking habeas corpus relief pursuant to 28 U.S.C. § 2241 on the ground that his continued detention in DHS custody without an individualized bond hearing is an unconstitutional denial of his right to due process. *See* Item 1. Respondent contends that petitioner's continued detention is within the permissible bounds of the due process clause since it is primarily the result of petitioner's own litigation choice to seek federal court review of the BIA's ruling, and because petitioner has not met his burden under the standards set forth by the United States Supreme Court in *Zadvydas v. Davis*, 533 U.S. 678 (2001), to demonstrate that there is no significant likelihood of removal in the reasonably foreseeable future.

Upon full consideration of the matters set forth in the submissions on file, and for the reasons that follow, the petition is denied.

## DISCUSSION

Petitioner challenges his continued detention by way of habeas corpus review under 28 U.S.C. § 2241, which "authorizes a district court to grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the Constitution or laws or treaties of the United States.' " *Wang v. Ashcroft*, 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C. § 2241(c)(3)); *see also Zadvydas*, 533 U.S. at 687 (petition under § 2241 is the basic method for statutory and constitutional challenges to detention following order of removal).

Matters pertaining to the detention of aliens pending the completion of immigration removal proceedings and pending removal following the entry of a final order of removal

are governed by two separate provisions of the INA—respectively, INA § 236, which authorizes the arrest and detention of an alien on warrant pending a decision on whether the alien is to be removed from the United States, and INA § 241, which authorizes detention of aliens after the issuance of a final removal order. In this case, petitioner's detention at the time he filed his habeas petition was pursuant to INA § 241(a), which requires the Attorney General to accomplish an alien's removal from the United States within a period of ninety days (the "removal period"), commencing on the latest of the following dates:

> (i)  The date the order of removal becomes administratively final.
> (ii)  If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.
> (iii)  If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

8 U.S.C. § 1231(a)(1)(B).

Detention during the ninety-day removal period is mandatory. *See* INA § 241(a)(2) ("During the removal period, the Attorney General *shall* detain the alien."). The statute also authorizes the Attorney General to continue detention of certain criminal aliens—*i.e.*, aliens ordered removed due to conviction of an enumerated crime—beyond the expiration of the ninety-day removal period. *See* INA § 241(a)(6).[2]

---

[2] INA § 241(a)(6) provides in full as follows:

An alien ordered removed who is inadmissible under section 1182 of this title, removable under section 1227(a)(1)(C), 1227(a)(2),or 1227(a)(4) of this title or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3).

In *Zadvydas*, the Supreme Court was presented with the challenge of reconciling this apparent authorization of indefinite detention with the Fifth Amendment's prohibition against depriving a person of their liberty without due process. The Court determined that INA § 241(a) authorizes detention after entry of an administratively final order of deportation or removal for a period that is "reasonably necessary" to accomplish the alien's removal from the United States. *Zadvydas*, 533 U.S. at 699-700. Recognizing the practical necessity of setting a "presumptively reasonable" time within which to secure removal, the court adopted a period of six months "for the sake of uniform administration in the federal courts …." *Id.* at 701.

> After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink. This 6-month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

*Id.*

To comply with the Supreme Court's ruling in *Zadvydas*, the Attorney General has promulgated regulations providing for review of the custody status of aliens who have been detained for more than six months after the issuance of a final order of removal. Under these regulations, a detainee who has been in post-removal-order custody for more than six months may submit a written request for release to DHS Headquarters Post-order Detention Unit ("HQPDU") setting forth "the basis for the alien's belief that there is no

---

8 U.S.C. § 1231(a)(6).

significant likelihood that the alien will be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(d)(1). The written request must include "information sufficient to establish his or her compliance with the obligation to effect his or her removal and to cooperate in the process of obtaining necessary travel documents." 8 C.F.R. § 241.13(d)(2).

In reviewing the request for release, the agency is required to consider "all the facts of the case including, but not limited to," the following:

> [T]he history of the alien's efforts to comply with the order of removal, the history of the Service's efforts to remove aliens to the country in question or to third countries, including the ongoing nature of the Service's efforts to remove this alien and the alien's assistance with those efforts, the reasonably foreseeable results of those efforts, and the views of the Department of State regarding the prospects for removal of aliens to the country or countries in question. Where the Service is continuing its efforts to remove the alien, there is no presumptive period of time within which the alien's removal must be accomplished, but the prospects for the timeliness of removal must be reasonable under the circumstances.

8 C.F.R. § 241.13(f).

If the agency finds that the alien has met the burden of demonstrating good reason to believe there is no significant likelihood of removal in the reasonably foreseeable future, and that there are no special circumstances justifying continued detention, then it must order the detainee released. 8 C.F.R. § 241.13(g)(1). However, the agency may impose certain conditions of release on the alien, such as requiring a bond, attendance in a rehabilitative program, or submission to a medical or psychiatric examination. *See* 8 C.F.R. §§ 241.5(b), 241.13(h)(1); *see also Zadvydas*, 533 U.S. at 695 ("[W]e nowhere deny the right of Congress to remove aliens, to subject them to supervision with conditions when

released from detention, or to incarcerate them where appropriate for violations of those conditions.").

As set forth above, in this case petitioner was received into DHS custody on February 24, 2012, upon his release from state custody, for detention pending completion of immigration removal proceedings as authorized by INA § 236. *See* Item 5-1, ¶ 8. This detention continued until November 30, 2012, when the BIA dismissed petitioner's appeal. *See* 8 C.F.R. § 1241.1(b) (order of removal becomes final upon dismissal of appeal by BIA).

After the order of removal became final, petitioner's detention was authorized by INA § 241(a), and the removal period commenced. DHS promptly undertook efforts to secure a travel document for petitioner's removal to Guyana. *See* Item 5-1, ¶¶ 11, 15. Then, on February 19, 2013, petitioner filed his petition in the Second Circuit for review of the BIA's dismissal of his appeal from the removal order, along with a motion for a stay of removal. *Id.* at ¶ 16.

Numerous decisions by the federal courts within the Second Circuit have held that the filing of a petition for circuit court review of the final order of removal, accompanied by a motion for stay of removal, triggers the application of a "forbearance policy" recognized by agreement between DHS and the Second Circuit under which DHS has agreed not to effectuate the removal of an alien while he or she has a petition for review pending before the circuit court. *See, e.g., Persaud v. Holder*, 2011 WL 5326465, at *1 (W.D.N.Y. Nov. 3, 2011) (filing of petition for circuit court review of final order of removal along with motion for stay of removal triggers "forbearance policy"); *Luna-Aponte v. Holder*, 743 F. Supp. 2d

189, 197 (W.D.N.Y. 2010) (even though circuit court had not "formally" ruled on motion to stay accompanying petition for review of BIA's dismissal of appeal from removal order, forbearance policy is "the equivalent of a court-ordered stay of removal"); *Shehnaz v. Ashcroft,* 2004 WL 2378371, at *2 (S.D.N.Y. Oct. 25, 2004) (where circuit court had not yet ruled on alien's requests to stay removal and for review of BIA's order, a stay of removal was in effect pursuant to Second Circuit forbearance policy); *cf. Abimbola v. Ridge*, 181 F. App'x 97, 99 (2d Cir. 2006) ("consistent pattern" of filing petition for circuit court review accompanied by motions to stay removal triggered application of Second Circuit's forbearance policy; petitioner's "self-inflicted wound should not establish grounds for [his] *Zadvydas* claim") (citing *Doherty v. Thornburgh*, 943 F.2d 204, 205 (2d Cir. 1991) (petitioner cannot rely on delays resulting from litigation strategy to claim that prolonged detention violates substantive due process).

Pursuant to this policy, the removal period which began on November 30, 2012, was "effectively stayed" as of February 19, 2013, when petitioner filed his petition for review and motion for stay of removal with the Second Circuit. *Luna-Aponte*, 743 F. Supp. 2d at 190. In the meantime, due to petitioner's motion to reopen the removal proceedings (filed on December 10, 2012 and denied by the BIA on January 22, 2013), DHS had less than a month to obtain the travel documents necessary for execution of the removal order prior to the filing of the petition for circuit court review (during which time petitioner's detention was mandatory, *see* INA § 241(a)(2)), and under forbearance, cannot resume its efforts until the Second Circuit rules either on the petition itself or on the pending motion for stay of removal.

Accordingly, because the detention challenged by the habeas petition in this action has been prolonged by petitioner's own pursuit of judicial review of the final order of removal, the duration of his detention cannot be found to constitute a violation of his rights under the due process clause of the Fifth Amendment. *Doherty*, 943 F.2d at 211 (refusing to find eight-year detention unconstitutional where alien's pursuit of judicial and administrative review caused the delay in removal); *Dor v. District Director, INS*, 891 F.2d 997, 1002 (2d Cir. 1989) (same, but with four-year detention); *see also Khaleque v. Department of Homeland Sec.*, 2009 WL 81318, at *3 (W.D.N.Y. Jan. 9, 2009) (denying alien's habeas petition upon finding that alien "elected to file a petition for review and a motion for a stay of removal" which "acted to prevent his removal until the Second Circuit issued its mandate").

Alternatively, considering petitioner's habeas challenge under the due process standards set forth in *Zadvydas*, petitioner must first "provide[ ] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701. Only if he makes this initial showing does the burden shift back to the government, which "must respond with evidence sufficient to rebut that showing." *Id.*; *see also Wang*, 320 F.3d at 146 ("reasonable foreseeability" test of *Zadvydas* "articulates the outer bounds of the Government's ability to detain aliens (other than those serving criminal sentences) without jeopardizing their due process rights").

Upon review of the submissions on the present petition, the court finds that petitioner has failed to sustain his initial burden under *Zadvydas*. The petition sets forth no factual basis to substantiate petitioner's belief that there is no significant likelihood he

can be removed to Guyana in the reasonably foreseeable future. As discussed above, DHS records reflect that prompt steps were taken upon the BIA's dismissal of petitioner's appeal from the IJ's removal order to secure the travel document, and the Guyanese Embassy has indicated its intent to issue the documents and execute the removal order upon completion of petitioner's federal court litigation.

In addition, the available statistical evidence reveals that in recent years, DHS has successfully repatriated significant numbers of aliens to Guyana, indicating no institutional barriers to petitioner's removal. For example, DHS reports show that in fiscal year ("FY") 2009, a total of 305 aliens were repatriated to Guyana; in FY 2010, 221 aliens were repatriated to Guyana; and in FY 2011, 189 aliens were repatriated to Guyana. *See* DHS Yearbook of Immigration Statistics: 2011, Table 41: http://www.dhs.gov/yearbook-immigration-statistics-2011-3. These circumstances provide further basis for DHS's expectation that the verification required for the issuance of a travel document by the Guyanese government can be accomplished within the reasonably foreseeable future following resolution of petitioner's pending request for review by the Second Circuit, after which time the necessary travel arrangements may be made for petitioner's release from custody and his repatriation to Guyana.

Significantly, petitioner has provided no evidence to contradict this expectation, or to otherwise establish compliance with the requirements of the DHS regulations described above. Indeed, several cases decided within this district have found the habeas petitioner's assertion as to the unforeseeability of removal, supported only by the mere passage of time, insufficient to meet the petitioner's initial burden to demonstrate no significant likelihood of removal under the Supreme Court's holding in *Zadvydas*. *See,*

*e.g., Khaleque*, 2009 WL 81318, at *4 (petitioner failed to meet initial burden where the only evidence relied upon was the fact that the Consulate had not responded positively to the request for a travel document); *Kassama v. Dep't of Homeland Sec.*, 553 F. Supp. 2d 301, 306-07 (W.D.N.Y. 2008) (petitioner failed to meet initial burden where there was no evidentiary proof in admissible form to suggest that travel documents would not be issued); *Haidara v. Mule*, 2008 WL 2483281, at *3 (W.D.N.Y. June 17, 2008) (petitioner failed to meet initial burden where he "merely ma[de] the general assertion that he will not be returned to [his country] in the foreseeable future"); *Roberts v. Bureau of Immigration & Customs Enforcement*, 2007 WL 781925, at *2 (W.D.N.Y. Mar. 13, 2007) (petitioner who did not present evidence that his country would not provide travel documents did not meet initial burden of proof); *Singh v. Holmes*, 2004 WL 2280366, at *5 (W.D.N.Y. Oct. 8, 2004) (petitioner who "failed to submit anything demonstrating that there is no significant likelihood of removal in the reasonably foreseeable future" did not meet initial burden of proof); *see also Juma v. Mukasey*, 2009 WL 2191247, at *3 (S.D.N.Y. July 23, 2009) (vague, conclusory and general claims that removal is not foreseeable, and that Embassy will not issue travel document in foreseeable future, fails to meet initial burden).

  Based on this authority, and upon full consideration of the record presented by way of the parties' submissions, the court finds that petitioner has failed to meet his initial burden under *Zadvydas* to "provide[ ] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," *Zadvydas*, 533 U.S. at 701, and that petitioner may not rely on the delay resulting from his request for circuit court review of the BIA's dismissal of his appeal from the IJ's removal order to claim that his prolonged

detention violates substantive due process. Accordingly, petitioner has failed to demonstrate that he is "in custody in violation of the Constitution or laws or treaties of the United States" for the purposes of granting habeas corpus relief under 28 U.S.C. § 2241, and his petition must be denied.

## CONCLUSION

For the foregoing reasons, the petition is denied, and the case is dismissed. This dismissal is without prejudice to file another petition should it subsequently appear that the presumptively reasonable period of post-removal-order detention has elapsed, and that removal is no longer reasonably foreseeable. *See Andreenko v. Holder*, 2012 WL 4210286, at *5 (W.D.N.Y. Sept. 18, 2012); *Kassama*, 553 F. Supp. 2d at 307.

It is further ordered that certification pursuant to 28 U.S.C. § 1915(a)(3) be entered stating that any appeal from this Judgment would not be taken in good faith and therefore leave to appeal as a poor person should be denied. *Coppedge v. United States*, 369 U.S. 438 (1962).

The Clerk of the Court is directed to enter judgment in favor of respondent, and to close the case.

So ordered.

\s\ John T. Curtin
JOHN T. CURTIN
United States District Judge

Dated: January 22, 2014
p:\pending\2013\13-930.2241.jan16.2014